## UNITED STATES v. LEHN.

(Circuit Court, S. D. New York. May 19, 1901.)

### No. 2,965.

1. CUSTOMS DUTIES—RULE OF CLASSIFICATION—CHIEF USE.

Where a tariff enumeration is descriptive of the use of imported merchandise, the chief or predominant use of an article should control in determining whether or not it comes within that enumeration.

2. SAME—CLASSIFICATION—COAL-TAR PREPARATIONS—LYSOL.

Lysol, a liquid substance in which coal tar is the origin of the elements that give it its determining characteristic, the chief use of the article being otherwise than as a medicine, though used as such to a limited and comparatively insignificant extent, is dutiable under the provision in paragraph 15, Schedule A, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 152 (U. S. Comp. St. 1901, p. 1627), for "preparations of coal tar, * * * not medicinal," and not under paragraph 3, Schedule A, § 1, c. 11, of said act, 30 Stat. 151 (U. S. Comp. St. 1901, p. 1627), covering "chemical compounds."

Appeal by the United States from a decision of the Board of General Appraisers which reversed the decision of the collector of customs at the port of New York in the assessment of duty on the importations in question.

The opinion of the board is as follows:

Wilkinson, General Appraiser. The merchandise is a brown liquid known as "lysol." It was returned by the appraiser as a chemical compound, and was assessed for duty accordingly at 25 per cent. ad valorem under paragraph 3, Schedule A, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 151 (U. S. Comp. St. 1901, p. 1627). It is claimed to be entitled to free admission under paragraph 524, Free List, § 2, c. 11, 30 Stat. 197 (U. S. Comp. St. 1901, p. 1682), or paragraph 657, Free List, § 2, c. 11, 30 Stat. 201 (U. S. Comp. St. 1901, p. 1687), or to be dutiable as a coal-tar preparation at 20 per cent. under paragraph 15, Schedule A, § 1, c. 11, 30 Stat. 152 (U. S. Comp. St. 1901, p. 1627).

Lysol is made by dissolving a fraction of tar oil, which boils between 190 and 200 C., in fat, both materials being saponified. The chemist reports that a sample submitted to the United States laboratory was found "to be composed of saponified cresol and a saponified oil, apparently fish oil; the latter causing a clear solution when mixed with water." Coal tar is the origin of the elements which give lysol its determining characteristic. In re Roessler & Hasslacher Chemical Company (C. C.) 49 Fed. 272 (affirmed by the Circuit Court of Appeals, In re W. J. Matheson & Co., 4 C. C. A. 3, 56 Fed. 482, 1 U. S. App. 308) the court said, in regard to the provision for coal-tar preparations: "I do not think it was the intention of Congress to restrict these paragraphs to products or preparations in which the entire constituents of coal tar still remained, simply changed in some way or other by manufacture. Nor is it particularly material that other substances have been added, if the determining characteristic of the product or preparation is something which it has received from coal tar."

Largely, the chief use of lysol is as a disinfectant and germicide. It is employed by physicians for disinfecting their hands and instruments in surgical work, but its use as a medicine is limited and comparatively insignificant.

The Circuit Court of Appeals, in the matter of acetanilid (United States v. Roessler & Hasslacher Chemical Co., 24 C. C. A. 604, 79 Fed. 313, 45 U. S. App. 572), said in part: "The article in question is a chemical compound known as 'acetanilid.' It is prepared from anilin oil, a product of coal tar, by treatment with carbolic acid, and derives its characteristics purely from coal tar, the acetic acid being merely a medium for its manufacture. * * * From the description of acetanilid above set forth, it is manifest that it is a

chemical compound, and also a preparation of coal tar, while both sides concede that it is not a color or dye. It is therefore within the description of both paragraphs 19, 76, Schedule A, § 1, c. 1244, Tariff Act Oct. 1, 1890, 26 Stat. 567, 570. If acetanilid be covered by the provisions of paragraph 19, above quoted, this would settle the question, since manifestly the designation 'all preparations of coal tar not colors or dyes' is more specific than the general descriptions 'all chemical compounds' or 'all chemical salts.' * * * The first question to be determined, then, is whether the article in question is a 'medicinal preparation,' within the meaning of paragraph 75, Schedule A, § 1, c. 1244, Tariff Act Oct. 1, 1890, 26 Stat. 570, and, if that question be answered in the negative, further inquiry will be unnecessary. * * * That the chief or predominant use of acetanilid is in the arts, and not in medicine, is quite clear, upon the proof; and, under familiar principles of construction, such use is controlling of its classification."

We find that lysol is both a chemical compound and a coal-tar preparation, not medicinal, not a color nor a dye, and that it is not one of the articles enumerated in paragraphs 524 and 657. Following the decisions cited, we sustain the claim that it is dutiable at 20 per cent. ad valorem, under paragraph 15, act of July, 1897. Reference is made also to G. A. 3900.

The board has made some former rulings which seem to recognize principles not entirely in harmony with this decision, and which are now on appeal, but they cannot be followed, in view of the fact that they are believed to be contrary to the court decisions above cited, which are binding on this board, as an inferior tribunal.

No application has been made for the suspension of these protests either by the counsel for the government or of the importers, and hence a suspension is not ordered under the provisions of rule 8, governing the procedure of the board, especially as a majority of the board sitting in the cases are of opinion that the court decisions referred to are conclusive of the plain legal principle which settles the controverted issues.

Tichenor, General Appraiser. I am constrained to dissent from the conclusions of the majority of the board in these cases. They appear to be contrary to the doctrine of the board's recent decisions respecting so-called sheep dip, soluble creosote, and carbolineum. G. A. 4124, 4376, and 4426. These articles are unquestionably chemical compounds. They are, to be sure, composed of coal-tar products in combination with other substances, but it does not appear as a fact from the evidence that the coal-tar product was the component material of chief value or the distinguishing constituent of the article in either case. Indeed, it would appear from the chemist's report of analysis, as quoted in the decision, that the saponified fish oil, rather than the fractional distillate of coal tar (cresol), is the distinguishing constituent or component material of chief value in this so-called lysol. It is not, therefore, a product or preparation of coal tar, within the meaning of the tariff act as construed by the courts in the Matheson Case, referred to in the decision. It appears from the evidence that the article is intended for, and is used as, a medicinal preparation, as well as a germicide or disinfectant in surgical operations, and perhaps otherwise. It having been assessed for duty at 25 per cent. ad valorem, and it being undisputed that it is a chemical compound, I am decidedly of the opinion that the protests should be overruled.

Comstock & Brown, for importers.
Chas. D. Baker, Asst. U. S. Atty.

TOWNSEND, District Judge (orally). The merchandise in question is a brown liquid known as "lysol." It was returned by the appraiser as a chemical compound, and assessed for duty accordingly at 25 per cent. ad valorem, under the provisions of paragraph 3, Schedule A, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1627]. It was claimed to be free under paragraph 524, Free

List, § 1, of said act, 30 Stat. 197 (U. S. Comp. St. 1901, p. 1682), as a product of coal tar, which claim has since been abandoned, or as dutiable at 20 per cent. ad valorem under paragraph 15, Schedule A, § 1, of said act, 30 Stat. 152 (U. S. Comp. St. 1901, p. 1627), as a preparation of coal tar, not a color or dye, and not medicinal, not specially provided for. This article fulfills every claim which is made for it, both by the importers and by the government. The only question raised was whether "chemical compounds" or "preparations of coal tar" is more specific. The opinion of the board, citing the decisions of the courts, shows that the term "coal-tar preparations" is more specific than the term "chemical compounds."

The decision of the Board of General Appraisers is therefore affirmed.